NOT FOR PUBLICATION                                                                          CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LAURENCE SIMON,<br><br>        Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | Civil Action No. 05-5503 (JLL)<br><br><br><br>**OPINION** |

**LINARES**, District Judge.

Currently before the Court is Petitioner Laurence Simon's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] Respondent, the United States (hereinafter referred to as the "Government"), submitted an Answer in response to the motion. Petitioner has also submitted supplemental briefing in support of his request for an evidentiary hearing.[2] The Court has considered the parties' submissions, as well as the oral argument of the parties held on October 27, 2006. For the reasons set forth below, the Court denies Petitioner's motion.

I.      **Factual and Procedural History**

Petitioner was Chief Financial Officer of Medi-Hut, Co., Inc. ("Medi-Hut"), a publicly-traded company based in Wall Township, New Jersey. Medi-Hut was engaged in the business of

---

[1] The instant matter is a companion case to Sanpietro v. United States (05-5550).

[2] 28 U.S.C. § 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto . . . ." Based on the reasons discussed herein, the Court hereby denies Petitioner's request for an evidentiary hearing, finding that the record in this case conclusively shows that Petitioner is not entitled to relief under 28 U.S.C. § 2255.

selling wholesale medical products, brand name and generic prescription drugs, and over-the-counter drug products.

### A. Criminal Information

The Government issued a two-count criminal information which charged Petitioner with (1) Conspiracy to Commit Securities Fraud, Wire Fraud, and Making False Certifications in Reports Required to be Filed with the Securities and Exchange Commission ("SEC") in violation of 18 U.S.C. § 371; and (2) Making False Statements to the SEC in violation of 18 U.S.C. § 1001. These charges stemmed from Petitioner's concealment of related-party transactions, participation in substantially inflating Medi-Hut's revenue and earnings, and publication of false information to the public and to the SEC between June 2001 and March 2003.  The Government claimed that by his actions, Petitioner caused holders of Medi-Hut stock to sustain approximately $100 million in losses.  The Government later refined its loss calculation to $96 million.

### B. Guilty Plea

On or about April 3, 2003, Petitioner signed a plea agreement in which he agreed to plead guilty to the two-count information.  In this plea agreement, Petitioner and the Government stipulated that Petitioner's offense level was 33, although Petitioner retained the right to move for a downward departure on the grounds that the Government's loss calculation of $96 million substantially overstated the seriousness of the offense pursuant to Application Note 15(B) of section 2B1.1 of the United States Sentencing Guidelines (the "Sentencing Guidelines").[3]  See Plea Agreement at p. 8.  Petitioner also explicitly waived his right to challenge his sentence

---

[3] Petitioner and the Government agreed that the Sentencing Guidelines manual effective November 1, 2001 was to be used by the Court in sentencing Petitioner.  See Plea Agreement (April 3, 2003) at p. 8.

through an appeal or a motion brought pursuant to 28 U.S.C. § 2255 should the Court determine that his applicable offense level under the Sentencing Guidelines was at or below level 29. See Plea Agreement at pp. 6, 9.

On August 19, 2003, the Court presided over a plea hearing conducted pursuant to Fed. R. Crim. P. 11, in which Petitioner was advised of the rights he was waiving by deciding to plead guilty to the offenses and of the punishments he was exposed to by virtue of his plea. Petitioner again repeatedly waived his right to challenge his sentence through an appeal or a motion brought pursuant to 28 U.S.C. § 2255 should the Court determine that his applicable offense level under the Sentencing Guidelines was at or below level 29. See Transcript (Aug. 19, 2003) at 19:17 - 20:23.[4] The Court also advised Petitioner that he was subject to 5 years imprisonment under

---

[4] A relevant exert from Petitioner's plea hearing which indicates Petitioner's understanding of this waiver is as follows:

Court: Also, you should understand that under certain circumstances, usually you and the Government have a right to appeal any sentence that I have imposed. If you believe there as [sic] been an error, you may file a post conviction challenge to your conviction or sentence. However, in this case, as I understand it, one of the stipulations is a waiver of appeal in this circumstance, and it is set forth in paragraph 8 of the stipulations.

Pursuant to that paragraph, you are agreeing to waive certain rights to file any appeal, any collateral attack, or any other writ or motion after sentencing, including, but not limited to an appeal under 18 U.S.C. 3742 or a motion under 28 U.S.C. Section 2255. Do you understand that you are waiving your right to file an appeal?

Petitioner: Yes.

Court: So if it is determined that the total offense level is equal to or less than 29, you would have waived your right to an appeal, do you understand that?

Petitioner: Yes.

Court: And you have discussed this with your attorney?

each of the two-counts in his indictment, which may run concurrently or consecutively.  See id. at

15: 21-16:8; Plea Agreement (April 3, 2003) at pp. 3-4.

### C. Sentencing

The Court presided over Petitioner's sentencing hearing on November 16, 2004.  At the

hearing, the Court accepted the Government's position that Petitioner caused losses of $96

million.[5]  See Transcript (Nov. 16, 2004) at 10:12-15.[6]  Petitioner's counsel, Edward Dauber,

---

| | |
|---|---|
| Petitioner: | Yes. |
| Court: | You are satisfied with the advice that he has given you, and has he answered all of the questions that you may have had with regard to the waiver of appeal? |
| Petitioner: | Yes. |
| Court: | Therefore, you should understand that under the circumstances set forth in the plea agreement and contained in Schedule A, you will not be able to file a post conviction appeal challenging your sentence, do you understand that? |
| Petitioner: | Yes. |

Transcript (Aug. 19, 2003) at 19:17 - 20:23.

[5] Petitioner's attorney objected to the Government's loss calculation of $96 million stating that the Government failed to prove such losses beyond a reasonable doubt as required by Blakely v. Washington, 542 U.S. 296 (2004).  See Transcript (Nov. 16, 2004) at 7:18-22.  At the time of Petitioner's sentencing, the Supreme Court reached its decision in Blakely but had not yet handed down its decision in United States v. Booker, 543 U.S. 220 (2005).  Thus, there was uncertainty as to the validity of the Sentencing Guidelines.  See, e.g., United States v. Dickerson, 381 F.3d 251, 260 n.9 (3d Cir. 2004).  Accordingly, the Court pronounced alternative sentences for Petitioner — 46 months imprisonment on each count, to run concurrently, both under the Sentencing Guidelines and independent from the Sentencing Guidelines, should such be found unconstitutional.  See Judgment (Dec. 8, 2004) at p. 2; Transcript (Nov. 16, 2004) at 81:13-22, 84:10-21; see also Dickerson, 281 F.3d at 260 n.9 (indicating that post-Blakely, the district court may wish to pronounce both a guideline sentence and an alternative non-guideline sentence).

In Booker, the Supreme Court held that district courts are not bound by the Sentencing Guidelines but must consult them and take them into account when sentencing.  See Booker, 543 U.S. at 264; see also United States v. Severino, 454 F.3d 206, 210 (3d Cir. 2006).  The Third Circuit has determined that Booker does not apply retroactively to motions brought pursuant to

Esq., in accordance with the terms of Petitioner's plea agreement, made a motion for a downward departure on Petitioner's behalf pursuant to Application Note 15(B) of section 2B1.1 of the Sentencing Guidelines. See id. 15:9 - 22. Based on this section, Mr. Dauber argued that the Government's loss calculation of $96 million overstated the seriousness of Petitioner's offense.

The Court granted Mr. Dauber's motion and awarded Petitioner a downward departure from his offense level of 33 to an offense level of 29.[7] See id. at 20:12-23. The Court emphasized that while it was "very disturbed by the nature of the crime involved" a "total offense level of 33, does substantially overstate the seriousness of the crime." See id. at 20:13-16.

The Government also made a motion for a downward departure on Petitioner's behalf pursuant to Section 5k1.1 of the Sentencing Guidelines based on Petitioner's cooperation with the Government. See id. at 22:3 - 23:9; see also U.S. Sentencing Guidelines Manual § 5K1.1 (2001). The Court granted this motion and further reduced Petitioner's offense level from a 29 to a 23.

---

section 2255 where the judgment of conviction was final as of January 12, 2005, the date Booker was issued. See Lloyd v. United States, 407 F.3d 608, 615-16 (3d Cir. 2005).

There is no Booker issue in this case. The Court pronounced alternative sentences, and Petitioner's judgment became final prior to January 12, 2005. See, e.g., Bautista v. United States, No. 05-1962, 2006 WL 1207988, at *4 (D.N.J. May 1, 2006) (indicating that where petitioner does not file an appeal, a judgment of conviction becomes final ten days after its entry); United States v. Trimble, Nos. 3:01 CR 341, 3:05 CV 154, 2005 WL 1563508, at *1 (M.D. Pa. June 30, 2005) (same).

[6] Petitioner apparently did not reserve his right to challenge the imposition of a 24 level increase under the Sentencing Guidelines based on a loss calculation of $96 million. See Plea Agreement (April 3, 2003) at p. 8. He only reserved the right to move for a downward departure pursuant to section 2B1.1, app. note 15(B).

[7] Pursuant to the Sentencing Guidelines effective November 1, 2001, the range of imprisonment at an offense level of 33 for an individual with no criminal history is 135 to 168 months. The range of imprisonment at an offense of level 29 for an individual with no criminal history is 87 to 108 months. See U.S. Sentencing Guidelines Manual, Sentencing Table (2001).

See id. at 27:24 - 28:12. The Court determined that the guideline range for an offense level of 23, with no criminal history points, was 46 to 57 months. See id. at 28:13-17; see also U.S. Sentencing Guidelines Manual, Sentencing Table (2001) (indicating that term of imprisonment for offense level 23 with no criminal history is 46 to 57 months). In response to this calculation of the applicable offense level, Mr. Dauber argued that Petitioner should be sentenced to the lowest end of the guideline range. See id. at 55:5 - 58:10. The Government agreed. See id. at 62:19-63:8.

The Court sentenced Petitioner to the low end of the guideline range – 46 months imprisonment on each of the two counts to run concurrently.[8] See id. at 81:13 - 22. Petitioner did not appeal. He is currently serving his sentence at the Federal Correction Institution in Fort Dix, New Jersey.

### D. Petitioner's Section 2255 Claims

Petitioner now asks the Court to reduce his sentence pursuant to section 2255.[9] He asserts that his Sixth Amendment right to counsel was violated because his attorney, Mr. Dauber, was ineffective. In particular, Petitioner claims that he had "good cause and reason to believe"

---

[8] In its Answer, the Government gives conflicting information as to whether Petitioner's 46 month sentences on each count were to run consecutively or concurrently. Compare Answer at p. 3 (indicating that sentences were to run consecutively), with Answer at p. 10 (indicating that sentences were to run concurrently). The Judgment in a Criminal Case issued by the Court on December 8, 2004 states that the sentences on each count are to run concurrently. See Judgment (Dec. 8, 2004) at p. 2.

[9] Although Petitioner captions his motion as one brought pursuant to 28 U.S.C. § 2255, Petitioner states in his memorandum in support of his motion that he is not attempting to set aside or vacate his sentence, but rather asking the Court to reduce his sentence. To the extent Petitioner is attempting to make a motion to reduce his sentence pursuant to Fed. R. Crim. P. 35, or to modify his term of imprisonment pursuant to 18 U.S.C. § 3582(c), Petitioner's request clearly does not meet the requirements of either Rule 35 or section 3582(c). Thus, the Court construes Petitioner's motion as one brought pursuant to section 2255.

that Mr. Dauber would file a direct appeal on his behalf within ten days of sentencing and he did not do so.[10] Furthermore, Petitioner asserts that Mr. Dauber should have introduced expert testimony and business documents at Petitioner's sentencing hearing to prove that the financial losses from his conduct were in the range of $400,000 to $1 million, as opposed to approximately $100 million. According to Petitioner, a loss calculation of $400,000 to $1 million would have resulted in an offense level of 17 and a sentencing range of 24 to 30 months. See U.S. Sentencing Guidelines Manual, Sentencing Table (2001).[11]

## II.     Standard of Review

A prisoner in federal custody may file a motion in the trial court challenging the validity of his sentence under 28 U.S.C. § 2255. See Morelli v. United States, 285 F. Supp. 2d 454, 458 (D.N.J. 2003). Pursuant to section 2255, a prisoner shall be released from custody if the sentence "(1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack." Morelli, 285 F. Supp. 2d at 458 (citing 28 U.S.C. § 2255).

---

[10] This claim does not appear in Petitioner's section 2255 motion, but he makes reference to his attorney's failure to file a direct appeal in his memorandum in support of the instant motion.

[11] Petitioner's loss calculation is presumably achieved as follows. The parties agreed that Petitioner's base level was 6; that 4 levels should be added because the offense involved fifty or more victims; that 2 levels should be added because the offense involved an abuse of the public trust; that 2 levels should be subtracted for acceptance of responsibility; and that 1 level should be subtracted for entering a guilty plea. This results in an offense level of 9. The Court reduced Petitioner's offense level by 6 levels due to his cooperation with the Government, resulting in an offense level of 3. Petitioner's loss calculation of $400 thousand to $1 million would necessitate an increase of 14 levels, which results in an offense level of 17. The Government disputes this calculation, see Answer at p. 13; however, the Government's calculations do not appear to take into account the Court's downward departure of 6 levels based on section 5K1.1.

To establish a right to habeas corpus relief, a prisoner must demonstrate that the sentence has a fundamental defect resulting in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.  See, e.g., United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989); Morelli, 285 F. Supp. 2d at 458-59 (citations omitted).

### III.     Legal Discussion

Petitioner claims, as indicated above, that habeas relief is warranted because his attorney was ineffective for failing to file a direct appeal challenging Petitioner's sentence and for failing to challenge the Government's loss calculation of $96 million at his sentencing hearing through the use of expert testimony and other documentary evidence.  The Court will consider these claims, but first must consider whether Petitioner may bring the instant section 2255 petition at all considering that he waived his right to do so in his plea agreement and at his plea hearing.

Petitioner has expressly waived his right to bring the instant section 2255 petition in both his plea agreement and at his plea hearing.  See Plea Agreement (April 3, 2003) at pp. 6, 9; Transcript (Aug. 19, 2003) at 19:17 - 20:23.  The relevant provisions of Petitioner's plea agreement states:

> Laurence Simon knows that he has, and voluntarily waives, the right to file any appeal, any collateral attack, or any other writ of motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a *motion under 28 U.S.C. § 2255*, which challenges the sentencing court's determination or imposition of the offense level, if the total offense level determined by the court is equal to or less than 29. . . .  To the extent that any appeal, collateral attack, writ, or motion is barred by this paragraph, the parties agree that it should be dismissed.

Plea Agreement at p. 9 (emphasis added).  The Court's colloquy with Petitioner as his plea hearing regarding this waiver is discussed supra at note 4.  Petitioner does not argue that his

8

waiver is invalid and in fact, does not even address the waiver of his rights in his section 2255 motion. Since Petitioner's section 2255 motion is challenging the Court's determination and imposition of his sentence pursuant to an offense level of 23, the waiver is implicated.[12] Accordingly, the Court must consider whether the waiver is enforceable.

In United States v. Khattak, the Third Circuit held that waivers of a right to appeal are valid if entered into knowingly and voluntarily unless enforcing such a waiver would result in a miscarriage of justice. 273 F.3d 557, 558, 562 (3d Cir. 2001). In so holding, the Third Circuit noted that ten other Courts of Appeals have held that waivers of a right to appeal are permissible and enforceable. See Khattak, 273 F.3d at 560-61 (noting that ten other circuits have held that "waivers of appeals are generally permissible and enforceable" and citing cases from the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits).

In determining when the enforcement of a waiver of the right to appeal would result in a miscarriage of justice, the Third Circuit noted that some of the other Courts of Appeals have earmarked particular situations in which an otherwise valid waiver will be excused. See Khattak, 273 F.3d at 562-63 (discussing cases from the Second, Fourth, and Seventh Circuits). However, the Third Circuit declined to adopt a "blanket rule prohibiting all review of certain otherwise valid waivers of appeal" and further refused to "earmark specific situations" which would warrant invalidating such a waiver. Id. at 562-63.

---

[12] Petitioner's attempts to couch his claims in terms of "ineffective assistance of counsel" do not change the fact that Petitioner is asking the Court to vacate, set aside, or correct his sentence pursuant to section 2255. Thus, Petitioner is really challenging the imposition of his sentence at an offense level of 23, as opposed to an offense level based on a lower loss calculation figure. To the extent that Petitioner is correct and his ineffective assistance of counsel claims survive his express waiver, the merits of such claims are discussed infra at note 13.

Instead, the Third Circuit emphasized that the governing standard is whether "the error would work a miscarriage of justice." Id. at 563. The court endorsed the factors set forth by the First Circuit in United States v. Teeter, 257 F.3d 14 (1st Cir. 2001) to use as a guideline in such an analysis. These factors are: " 'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.' " Khattak, 273 F.3d at 563 (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). The Third Circuit cautioned, however, that it would be an "unusual circumstance" where an "error amounting to a miscarriage of justice may invalidate the waiver." Id. at 562.

The Third Circuit has not determined whether its ruling in Khattak is equally applicable to a criminal defendant's waiver of the right to bring a motion pursuant to section 2255. See United States v. Wilson, 429 F.3d 455, 460 n.6 (3d Cir. 2005) (indicating that the Third Circuit has not yet addressed the issue of whether a plea agreement provision waiving the right to collateral attack is valid and enforceable); United States v. Dancy, Nos. 3:CR-03-340, 3:CV-06-070, 2006 WL 2504028, at *2 (M.D. Pa. Aug. 28, 2006) ("Our Court of Appeals has not definitively spoken as to the validity of the provisions in the plea agreement waiving the right to file a § 2255 motion."). However, in a non-precedential opinion, the Third Circuit indicated that a waiver of the right to collaterally attack a sentence is valid if it meets the Khattak test, i.e., the waiver was knowing and voluntary and the enforcement of the waiver does not result in a miscarriage of justice. See United States v. Perry, 142 Fed. Appx. 610, 2005 WL 1865420, at *1 (3d Cir. Aug. 8, 2005) (concluding that district court's denial of petitioner's motion collaterally

10

attacking his sentence was proper in light of petitioner's waiver of his right to pursue such a collateral attack).

Various district courts within this circuit have held that a waiver of a right to collaterally attack a sentence by filing a motion pursuant to 28 U.S.C. § 2255 is valid and enforceable under the Khattak standard.  See, e.g., Darr v. United States, No. 06-608, 2006 WL 2645119, at *2 (D.N.J. Sept. 14, 2006) ("While the Third Circuit has not ruled on the enforceability of waivers and collateral attacks, the logic of Khattak is as applicable here as it is to appeals."); Dancy, 2006 WL 2504028, at *3 (holding that petitioner's waiver of his right to bring a section 2255 motion was valid under Khattak standard and dismissing section 2255 petition on such grounds); United States v. Minott, Crim. No. 04-59, Civ. No. 05-1135, 2006 WL 2372118, at *1 (W.D. Pa. Aug. 15, 2006) (same); United States v. Lam, No. Civ. 04-304, Crim. 05-5530, 2006 WL 1530875, at *2-3 (E.D. Pa. June 2, 2006) (same); Prado v. United States, Nos. Civ. 05-0938, Crim. 01-373-7, 2005 WL 1522201, at *2 (D.N.J. June 27, 2005) (same).   Other circuit courts have also held that a waiver of the right to file a section 2255 motion is enforceable.  See, e.g., United States v. Cockerham, 237 F.3d 1179, 1183 (10thCir. 2001); Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000); Watson v. United States, 165 F.3d 486, 488-89 (6th Cir. 1999).

The Court agrees with these courts and finds that the standard set forth by the Third Circuit in Khattak is equally applicable to waivers of the right to collaterally attack a sentence pursuant to section 2255.  To hold otherwise would render such a waiver agreement essentially meaningless and would result in a mockery of the judicial system by affording criminal defendants the benefits of plea agreements, while shielding them from their own promises made under such agreements.  See, e.g., Khattak, 273 F.3d at 561 (nothing that " 'waivers preserve the

finality of judgments and sentences imposed pursuant to valid pleas of guilty' " (quotation omitted)); Dancy, 2006 WL 2504028, at *3 (stating that to excuse a defendant's waiver would " 'make a mockery of [Fed. R. Crim. P. 11] and the judicial system' " (citation omitted)). Therefore, Petitioner's waiver is valid and enforceable if it was entered into knowingly and voluntarily and the enforcement of such would not result in a miscarriage of justice.

 First, it is clear that Petitioner entered into this waiver knowingly and voluntarily. Petitioner does not even allege, much less present evidence, that his waiver was unknowing or involuntary. The record supports this finding. Petitioner not only signed the plea agreement in which the waiver was contained, but he also, upon the Court's questioning at the plea colloquy held on August 19, 2003, repeatedly informed the Court that he understood his rights and was agreeing to voluntarily waive his right to pursue a direct appeal, section 2255 motion, or other collateral attack on his sentence should the Court sentence him at an offense level at or below 29. See, e.g., Khattak, 273 F.3d at 563 (holding that a waiver of the right to appeal is knowing and voluntary where the sentencing judge inquired as to whether the defendant understood his rights and defendant received a sentence within the terms of his plea agreement); Dancy, 2006 WL 2504028, at *3 (holding that waiver of right to file a section 2255 motion is enforceable where petitioner indicated that he understood the waiver at his plea colloquy); Prado, 2005 WL 1522201, at *2 (enforcing waiver of right to bring section 2255 motion where petitioner signed plea agreement including the waiver and stated that he understood the waiver at his plea colloquy).

 Further, Petitioner provides no basis for the Court to conclude that the enforcement of his express waiver of his rights would result in a miscarriage of justice. Applying the Teeter factors

12

as a guideline, this case does not present the type of "unusual circumstance" where enforcing Petitioner's waiver would result in a miscarriage of justice. Petitioner claims that his sentence should be reduced because his counsel erred by not presenting evidence to challenge the Government's loss calculation of $96 million. This error, if it can even be characterized as an error as opposed to a strategic choice by counsel, is not the type of clear, grave error that results in a miscarriage of justice.

Petitioner provides no support for his assertion that the Government's loss calculation was off by $95 million. Further, Mr. Dauber's efforts in negotiating Petitioner's plea agreement and in arguing at Petitioner's sentencing resulted in a substantial reduction in Petitioner's sentencing exposure from 168 months, which is the high end of the range for an offense level of 33, to 46 months, which is the low end of the range for an offense level of 23. Cf. United States v. Fagan, Nos. Crim. A. 02-75, Civ.A. 04-2176, 2004 WL 2577553, at *4 (E.D. Pa. Oct. 4, 2004) (indicating that a miscarriage of justice did not result from attorney's purported errors at sentencing where defendant received sentence that was less than half of the maximum sentence contemplated in his plea agreement). Petitioner acquiesced in this result by signing a plea agreement which stated that he was subject to a maximum sentence of five years on each count to potentially run consecutively. He also did not expressly reserve his right to challenge the Government's loss calculation. Further, Petitioner did not mention that he was "extremely shocked" at his counsel's purported failure to introduce expert testimony rebutting the Government's loss calculation when he spoke to the Court during his sentencing proceeding. See Transcript (Nov. 16, 2004) at 58:17 - 62:17.

In addition, the Court cannot determine that the impact of this purported error would have

been significant enough to warrant excusing Petitioner's waiver.  Accepting Petitioner's loss calculation, Petitioner would have still faced a term of 30 months imprisonment.  This calculation, based on a speculative assertion of loss of $400,000 to $1 million, assumes that the Court and the Government, under such circumstances, would have still treated Petitioner as favorably as they did.  Also, the Court indicated, by imposing a non-guideline sentence of 46 months, that it believed that regardless of what the guideline sentence turned out to be, 46 months was a reasonable sentence for Petitioner's conduct.   Accordingly, the Court finds that Petitioner has not shown that his attorney's failure to present expert testimony and other evidence at his sentencing hearing to challenge the Government's loss calculation resulted in the type of miscarriage of justice that would excuse his express waiver of his rights.  See, e.g., Minott, 2006 WL 2372118, at *1 ("Petitioner does not allege that enforcing the waiver will work a miscarriage of justice, nor is there anything in the record that would suggest that enforcement would work such a miscarriage of justice").

 Petitioner provides no basis for the Court to carve out an exception to the general rule that waivers of the right to appeal and collaterally attack one's sentence are valid and enforceable where the movant is claiming ineffective assistance of counsel at sentencing.  Notably, Petitioner does not claim that the waiver itself or the plea proceedings were tainted by ineffective assistance of counsel.  In Teeter, the First Circuit stated that a miscarriage of justice would result if the "plea proceedings were tainted by ineffective assistance of counsel."  See Teeter, 257 F.3d at 25 n.9; see also United States v. Akbar, 181 Fed. Appx. 283, 286-87 (3d Cir. May 12, 2006) (stating that a waiver is not unenforceable because a defendant claims ineffective assistance of counsel but is only unenforceable " 'if the record of the criminal proceeding revealed that the claim that

14

*the waiver* was the result of ineffective assistance of counsel was meritorious' " (quotation omitted) (emphasis added)).

Various courts are in line with this language in Teeter, holding that claims of ineffective assistance of counsel at sentencing, as opposed to claims that the waiver or plea itself was tainted by ineffective counsel, do not excuse knowing and voluntary waivers of post-conviction rights. See, e.g., United States v. White, 307 F.3d 336, 343 (5th Cir. 2002) (stating that "an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directed affected the validity of that waiver or the plea itself"); Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000) (holding that the defendant waived his right to bring a section 2255 motion where his motion argued ineffective assistance of counsel at sentencing as opposed to counsel's deficient performance in negotiating the waiver); Watson v. United States, 165 F.3d 486, 489 (6th Cir. 1999) (upholding waiver where petitioner's "[section] 2255 motion does not claim ineffective assistance of counsel, but rather challenges the length of his sentence, an issue clearly contemplated by, and subject to, his plea agreement"); United States v. Robinson, Nos. Civ. 04-884, Crim. 02-760, 2004 WL 1169112, at *3-4 (E.D. Pa. Apr. 30, 2004) (refusing to excuse defendant's waiver of his right to bring section 2255 motion where defendant's claims of ineffective assistance of counsel were based on counsel's performance at sentencing as opposed to ineffectiveness in entering into plea agreement). Petitioner's claim that his counsel was ineffective for failing to file a direct appeal, for the same reasons, does not excuse the waiver. See, e.g., Robinson, 2004 WL 1169112, at *3-4 (upholding waiver of right to collaterally attack sentence where petitioner challenged counsel's failure to file a direct appeal as opposed to counsel's deficiency in plea proceedings).

Therefore, for the foregoing reasons, the Court dismisses the instant section 2255 motion because Petitioner waived his right to bring such a motion.  See, e.g., Robinson, 2004 WL 1169112, at *3-4 (denying section 2255 petition where petitioner waived right to bring such a petition and challenged counsel's actions at sentencing and in failing to file appeal, as opposed to challenging validity of waiver itself).[13]

---

[13]  To the extent that the Court should reach the merits of Petitioner's ineffective assistance of counsel claims, such do not demonstrate the requisite deficiency of counsel's performance and prejudice necessary to meet the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Petitioner cannot show that Mr. Dauber was deficient in failing to file an appeal on his behalf or that such prejudiced Petitioner because, as indicated above, he explicitly waived his right to file such an appeal.  Although Petitioner alleges that he requested his trial counsel to file an appeal of his sentence, having determined that his waiver is valid and that no such appeal was permitted under the terms of the waiver, the Court finds that Mr. Dauber was not ineffective in failing to file said appeal.  Furthermore, the Affidavit of Edward J. Dauber, submitted to the Court by the Government during oral argument, suggests that Petitioner had discussed same with Mr. Dauber, and was aware that no appeal would be filed on his behalf.

In addition, Petitioner does not show that Mr. Dauber's failure to challenge the Government's loss calculation at sentencing with expert testimony and other documentary evidence was deficient and that such conduct prejudiced Plaintiff.  Petitioner provides no evidence that the Government's loss calculation is incorrect.  At sentencing, Petitioner's attorney made various strategic arguments, which, as discussed above, resulted in favorable treatment from the Court and the Government and thus, a substantial reduction in Petitioner's sentence exposure.  See United States v. Junius, Nos. Crim. 01-457-05, Civ. 04-2905, 2005 WL 1993844, at *3 (E.D. Pa. Aug. 11, 2005) (indicating that counsel was not ineffective where his efforts resulted in a substantial reduction in the defendant's sentence).  Thus, Petitioner cannot show that there is a reasonable probability that but for counsel's purported error, the result of the proceeding would have been different. See, e.g., Strickland, 466 U.S. at 694.

Petitioner's reliance on United States v. Olis, 429 F.3d 540 (5th Cir. 2005), which is not binding on this Court and distinguishable from the instant case on a number of levels, does not warrant relief in Petitioner's favor.   The Court was only required to make a "reasonable estimate of the loss," see U.S. Sentencing Guidelines Manual § 2B1.1 app. note 3(C).  Petitioner was ultimately sentenced as though he caused $7 million to $20 million in losses.  Accordingly, the Court finds that Petitioner's attorney was not deficient in this regard because his conduct was not only reasonable, but particularly effective in reducing Petitioner's sentence and that Petitioner was not prejudiced by counsel's conduct.

## **CONCLUSION**

For the reasons explained above, Petitioner Laurence Simon's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).  An appropriate order accompanies this opinion.


Date:   December 5, 2006                                          /s/ Jose L. Linares
                                                                                       Jose L. Linares
                                                                                       United States District Judge